Mygatt v. Willcox.

---

HENRY R. MYGATT, Respondent, v. LUCINDA WILLCOX and WHITMAN WILLCOX, Appellants.

(GENERAL TERM, SIXTH DISTRICT, MAY, 1869.)

So long as an attorney is engaged upon a general retainer in the same matter, he may allow a portion of his disbursements or charges to overrun the six years, without peril from the statute of limitations.

Plaintiff was retained by defendants, administrator and administratrix of an estate, and acted for them on a final accounting in 1852, and also on an appeal from the surrogate's decree, which was reversed, and the matter sent back for a rehearing; and the matters before the surrogate, and contested on the appeal, remained undisposed of until settled by agreement of the parties in 1866.—*Held*, that plaintiff's retainer being general and not terminated by any express act of either party, continued until the final settlement in 1866, and that the statute of limitations did not begin

\* This decision was affirmed by the Court of Appeals, at the March Term, 1870.

Mygatt v. Willcox.

to run against any item of his account for services and disbursements until that time.

The case of *Adams* v. *The Fort Plain Bank* (36 N. Y., 255), distinguished.

Plaintiff having acted for both defendants, and their management of the estate being the subject for consideration before the surrogate, they were "united in interest" (Code, § 119) and jointly liable for plaintiff's fees and disbursements.

The liability of an administrator for the fees of counsel employed by him on an accounting is personal.

An allowance made by a surrogate for costs and counsel fees on an accounting, is not conclusive in an action by the attorney to recover for his services and disbursements.

In such action there is no distinction, as regards interest, between charges for disbursements and for services; in neither case can interest be charged, by way of penalty for a default, until a demand has been made, or the account is liquidated between the parties, or the debt has become due by the termination of the employment.

ACTION by plaintiff for services and disbursements, rendered and paid at the request of the defendants, upon an accounting had before the surrogate of Chenango county, and upon appeal from the decree rendered by said surrogate. The defendants were administrator and administratrix of the estate. The employment of plaintiff was in 1852. In 1855, a decree was made in which $601\frac{55}{100}$ were allowed defendants as their costs and disbursements upon such settlement. In 1858, such decree was reversed upon appeal to the Supreme Court, and the whole case was ordered to be reheard before the said surrogate. The case remained in this condition (no rehearing being had) until February 26, 1866, when the parties settled all the matters in difference between them. This action was commenced May 2, 1867; was referred, and on the report of the referee, judgment was entered in favor of the plaintiff, for $2,531.56 damages and costs.

The defendants appealed to this court.

*Isaac S. Newton* and *D. L. Follet,* for appellants, cited *Adams* v. *Fort Plain Bank* (36 N. Y., 255, and 23 How., 45); *Van Rensselaer* v. *Jewett* (2 N. Y., 135); *Judson* v. *Gray* (1 Kern., 408); *Rensselaer Glass Factory* v. *Reid* (5 Cow., 642–3); *Lusk* v. *Hastings* (1 Hill, 659 and refs.); *Jackson* v.

*Bartlett* (8 John. R., 367); *Kellogg* v. *Gilbert* (10 John. R., 220); *Walradt* v. *Maynard* (3 Barb., 586); *Shank* v. *Shoemaker* (18 N. Y., 489); *Fox* v. *Fox* (24 How., 409); *Sweet* v. *Bartlett* (4 Sand., 661); *Tindall* v. *Jones* (11 Abb., 259); *Cullen* v. *Miller* (9 N. Y., Leg. Obs., 62); *Davis* v. *Gorton* (16 N. Y., 255); *Palmer* v. *City of New York* (2 Sand., 318); *Hallock* v. *Losee* (1 Sand., 220); *Kimball* v. *Brown* (7 Wend., 322); *Edmondston* v. *Thomson* ( 15 Wend., 554); *Green* v. *Ames* (14 N. Y., 225); *Peck* v. *N. Y. & U. S. Mail Co.* (5 Bosw., 226); *M'Laren* v. *Charrier* (5 Paige, 530); *Pratt* v. *Allen* (19 How. Pr. R., 456); *Trust* v. *Repoor* (15 How. Pr. R., 570).

*Henry R. Mygatt*, respondent, in person, cited *Willcox* v. *Smith* (26 Barb., 326); *Willson* v. *Burr* (25 Wend., 386); *Noyes* v. *Blakeman* (2 Seld., 580); *Monell* v. *Marshall* (25 How., 425); *Hill* v. *Tucker* (1 Taunt., 9); 3 Parsons on Con., 5th ed., 93; *Harris* v. *Osbourn* (2 Cromp. and Mees., 629); *Martindale* v. *Falkner* (2 Com. Bench, 706); *Whitehead* v. *Lord, adr.* (11 Eng. Law and Eq., 587); *Hall* v. *Wood* (9 Gray, 60); *Morse* v. *Potter* (4 id., 292); 1 Wait's Law and Prac., 982–84, 550; *Eliot* v. *Lawton* (7 Allen, 274); *Van Horn* v. *Scott* (4 Casey Penn., 316); *Walker* v. *Goodrich* (16 Illinois, 341); *Case* v. *Hotchkiss* (1 Transc. Appeals, 285); *McMahon* v. *N. Y. & E. R. R.* (20 N. Y., 469); *Sipperly* v. *Stewart* (50 Barb., 69); *Graham* v. *Chrystal* (2 Keyes, 25); *Van Rensselaer* v. *Jewett* (2 N. Y., 140); *Rensselaer Glass Fact.* v. *Reid* (5 Cow., 588); *Gillett* v. *Van Rensselaer* (1 E. P. Smith, 399); *Trotter* v. *Grant* (2 Wend., 413, 415).

Present—BALCOM, BOARDMAN and PARKER, JJ.

By the Court—BOARDMAN, J.   I have examined with care nearly all the cases cited by counsel. As a result of such examination, it is clear that if the contract between the plaintiff and defendants was entire, to attend the final settlement of the accounts of defendants before the surrogate,

it was continuous and lasted until such accounts were disposed of by the surrogate or by the parties. Where an attorney is retained in an action, the law fixes the responsibility of the attorney to act until the business is finally disposed of, unless upon notice or by arrangement such responsibility sooner ceases. The referee, by his second finding, determines that such was the fact in this case. It is contended by the defendants that such finding is not warranted by the evidence That the plaintiff was retained in the case, and acted before the surrogate and on appeal, must be conceded. It is equally true that such business as he was engaged in before said surrogate and on said appeal was undisposed of until 1866, when the same was finally settled by the action of the parties. Upon the conceded facts, I think the law would declare the plaintiff's retainer general in the matter, and continuing until the final settlement in 1866. Under such circumstances the statute of limitations would not begin to run until the settlement in 1866, and plaintiff's action is well brought. (3 Pars. on Cont., 93 ; *Whitehead* v. *Lord,* 11 Eng. Law and Eq., 587 ; *Hall* v. *Wood,* 9 Gray, 60 ; *Eliot* v. *Lawton,* 7 Allen, 274.)

The case of *Adams* v. *Fort Plain Bank* (36 N. Y., 255) is not in conflict. The items of plaintiff's account, in that case, consisted of several isolated and independent charges for services in no way connected with each other.

Here, however, all the services rendered by the plaintiff were in and about a single transaction, the final settlement of the accounts of the defendants as administratrix and administrator, the retainer general and the employment continuous until the settlement. Indeed, on page 260, DAVIES, Ch. J., recognizes the rule laid down that the services must be brought to an end before the attorney can bring an action. It is in the power of an attorney, at any time, to demand pay for services rendered, and, if there be no contract in the way, he can refuse to proceed until such payment is made. Upon a refusal or neglect to pay after such demand he can sue for and collect the same. But so long as he is engaged in the

Mygatt *v.* Willcox.

same employment, upon the same matter, he may allow any portion of his disbursements or services to overrun six years without peril from the statute. The statute of limitations does not, therefore, bar plaintiff's cause of action.

Are the defendants properly joined? They insist their interests are not joint. But they were jointly interested in the settlement of their accounts, the employment was for their joint benefit. Plaintiff acted for them both, and both recognized and allowed such action on his part. However diverse or even hostile their interests might be on distribution, they necessarily harmonized in their trust capacity. Each had an equal interest in and control over the trust property, and their management and disposition of such trust estate was the subject for consideration before the surrogate. This brings the case within section 119 of the Code, "united in interest." It would be impossible to apportion such costs between these defendants. (1 Pars. on Cont., 5th ed., 14, 19.)

It is settled by the case of *Willcox* v. *Smith* (26 Barb., 316) that the defendants are personally liable to the plaintiff, and that they cannot be made liable in their representative character. (See also *Bowman* v. *Tallman*, 2 Robert, 385; 1 Wait Law and Pr., 84.)

The item of $601.55, adjusted by the surrogate in 1855, was not conclusive between attorney and client. It was simply an allowance of so much to the defendants upon their account in exoneration of their liabilities. When the decree making such allowance was reversed, even the slight vitality given by the surrogate's allowance was gone, and the items thereafter remained as if they had never been allowed.

The referee allowed interest to the plaintiff upon his disbursements for defendants from the date of such disbursements respectively to the date of his report (June 12, 1868). In this I think the referee erred. He should have restricted that interest as in the case of services, and allowed interest thereon only from the 26th day of February, 1866. As the defendants' obligation to repay these advancements is implied from the relations of the parties, interest by way of penalty,

cannot be charged thereon until a demand has been made, or the amount has been liquidated between the parties, or the debt become due, by the termination of the contract of employment. Until the debtor is in some manner in default, for not paying the money in pursuance of his contract, he is not chargeable with interest. ( *Van Rensselaer* v. *Jewett*, 2 N. Y. R., 135.) We have already held that this contract was not complete, and that the plaintiff's right of action for his services and payment was not perfect until February, 1866. How, then, can it be held that the defendants were guilty of a breach of contract whenever a payment was made by plaintiff in their behalf, so as to entitle such payment to draw interest. The plaintiff was not bound to make these advances for the defendants; but if he did so, they must be treated as a part of his account, payable, as and when the remainder becomes payable, and drawing no more interest than such remainder. Moneys advanced are no more sacred, under the circumstances of this case, than services. Whenever the account as a whole is payable, from that time, interest is chargeable. (*Adams* v. *Fort Plain Bank*, 261.)

The exceptions of defendants are sufficient to cover the error of the referee.

The amount of interest improperly allowed as afosesaid, upon disbursements, prior to February 26, 1866, is $281.33. A new trial, costs to abide the event, should be granted, unless the plaintiff shall stipulate to remit that amount from the judgment in this action at its date, in which case such judgment to be affirmed without costs to either party on this appeal.